# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GORDON CLARK, | ) | 3:22-CV-0039 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANTANDER BANK N.A., *et al.*, | ) | |
| *Defendants*. | ) | October 27, 2023 |

## RULING AND ORDER ON PLAINTIFFS' MOTION FOR STAY PENDING APPEAL, DEFENDANTS' MOTIONS TO DISMISS, AND PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND COMPLAINT

Sarala V. Nagala, United States District Judge.

In this action, *pro se* Plaintiff Gordon Clark and the estate of Lillian J. Clark, Gordon Clark's deceased wife, allege violations of several federal, state, and common law rights stemming from Defendants' alleged actions in connection with the repossession of the Clarks' home. In short, the Amended Complaint alleges that through a series of actions, Defendants Wells Fargo and Scott Powell ("the Wells Fargo Defendants"); Santander Bank, N.A., and Timothy Wennes, Pierre Habis, and Kenneth O'Neill ("the Santander Defendants"); and Bendett & McHugh P.C., along with Adam L. Bendett, Jeffrey M. Knickerbocker, Mark A. Piech, Joseph Abraham, and Dominick D. Neveux ("the Bendett Defendants"), worked collectively to unlawfully and fraudulently foreclose on the Clarks' home. Defendants have moved to dismiss the complaint in its entirety for various reasons. For the reasons detailed below, the Court agrees with Defendants that the Amended Complaint must be dismissed. Plaintiffs have also moved for leave to amend their complaint; as the Court finds that the proposed amendments, and any amendments related to the conduct Plaintiffs allege, would be futile, Plaintiffs' motions for leave to file the proposed Second Amended Complaint are denied, but the Court will allow Plaintiffs leave to file a proposed Third Amended Complaint consistent with this ruling.

## I.     FACTUAL BACKGROUND

The facts alleged in the Amended Complaint, ECF No. 72, are accepted as true for the purpose of the present motion to dismiss.[1]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court may also consider the attachments to the complaint in deciding a motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Gordon and Lillian Clark[2] were married for twenty-seven years before she passed away in October of 2020.  Am. Compl., ECF No. 72 ¶ 1.[3]  Prior to her death, Lillian owned a home located at 70 Elm Street in Enfield, Connecticut.  *Id.*, Ex. F.  On March 21, 2008, Lillian obtained a home equity line of credit ("HELOC") secured by a mortgage on the property.  *Id.*  The loan is presently owned by Santander.  *See* Am. Compl. at 21 ¶ 4.  Plaintiffs contend that the mortgage was defective because it did not contain a property description, though it identified the property as 70 Elm Street.  *Id.* ¶ 28(3); *id.*, Ex. F.  On February 12, 2012, Plaintiff Clark filed a notice of lien in the amount of $300,000 against the property.  Am. Compl., Ex. E.

On May 1, 2019, Santander Bank, N.A. sent a letter addressed to "Lillian Byron f/k/a Lillian Clark" stating that Santander had recently been notified by the Town of Enfield that Lillian was delinquent on property taxes, the payment of which was a term of Santander's HELOC loan.  *Id.* ¶ 28(1); Am. Compl, Ex. C.  The letter stated that, if a lump sum payment of $37,575.86 was not paid by May 20, 2019, Santander would "exercise its rights to accelerate the amount secured by the collateral and institute a lawsuit to foreclose on the collateral."  *Id.*  According to Plaintiffs, however, the Clarks were current on their property taxes before this letter was sent.  *Id.* ¶ 28(2).

---

[1] The Amended Complaint contains many facts that are irrelevant to the instant action.  For purposes of simplicity, the Court recounts only those facts that may bear on the legal issues in the instant litigation.

[2] For ease of reference, the Court will refer to Gordon Clark as "Plaintiff," and will refer to Lillian Clark by her first name.  Where necessary, the Court will refer to Plaintiff Estate of Lillian J. Clark as the "Estate Plaintiff."

[3] The Amended Complaint has several sets of paragraphs with duplicative paragraph numbering.  For purposes of the factual background section, the Court's citations are to the numbered paragraphs contained in the Amended Complaint's Statement of Facts section, which begin at ECF No. 72, page 11.

Plaintiff repeatedly called, emailed, and mailed letters to Santander and its executives, including to Defendant Powell, who was at the time Santander's Chief Executive Officer and later became Wells Fargo's Chief Operating Officer, and the other individual Santander Defendants, demanding that the erroneous foreclosure letter be withdrawn, but Santander would not withdraw it. *Id.* at 22 ¶¶ 9–10; *id.* at 1–2 ¶ 1; *id.* at 3 ¶ 4; *id.* at 4 ¶ 10.

Instead, on November 22, 2019, Santander Bank, NA ("Santander") filed a complaint against Lillian in Connecticut Superior Court, seeking reformation of the mortgage issued on the home, as well as foreclosure of that mortgage. *Id.* ¶¶ 26–27. Because Plaintiff had a lien on the property, he was also named as a co-defendant in the foreclosure action. *See Santander Bank N.A. v. Lillian Clark, et al.*, Connecticut Superior Court, Housing Session, Case No. HHD-CV19-6120472-S. Plaintiffs contend that this action was filed despite Lillian never having missed a payment on the mortgage, *id.* ¶ 28(1), and despite that Santander did not have a valid interest in the property, *id.* ¶ 28(3). Plaintiff alleges he has a valid and secured first lien on the property ahead of Santander. *Id.* ¶ 28(4). Plaintiffs further allege that Defendant Bendett & McHugh, as well as several of its attorneys named in this lawsuit (Defendants Adam Bendett, Jeffrey Knickerbocker, Dominick Neveux, Joseph Abraham, and Mark Piech), knew that the foreclosure suit was meritless, yet proceed anyway. *Id.* ¶¶ 29–30, 38. Lillian bequeathed her home to Plaintiff when she passed away in October of 2020, during the pendency of the state foreclosure suit. *Id.* at 12 ¶ 8.

On May 2–4, 2023, the Superior Court for the Judicial District of Hartford has held a trial in the underlying foreclosure action and entered judgment in favor of Santander, ordering a foreclosure by sale. *See Santander Bank N.A. v. Lillian Clark, et al.*, HHD-CV-19-6120472S; ECF No. 195-3. The Connecticut Appellate Court has since affirmed this decision, dismissing the

appeal as "frivolous."  *Santander Bank N.A. v. Lillian Clark, et al.*, Appeal No. AC-46473; ECF No. 195-4 at 2.

Separately, the Amended Complaint alleges that Plaintiff submitted complaints to banking regulators about Defendants Wells Fargo and Powell allegedly committing financial fraud, and then was subsequently denied the opportunity to open two business checking accounts with Wells Fargo for no legitimate reason.  Am. Compl., Counts Sixteen, Seventeen, & Eighteen, ¶¶ 3–6. Plaintiff was later able to open the accounts at another bank.  *Id.* ¶ 7.

Although the Amended Complaint spans forty-three pages, this is the sum total of the relevant facts.  To the extent any further information in the Amended Complaint is relevant to the Court's decision, it will be discussed below.  Based on these facts, Plaintiffs have brought the following claims against all Defendants except Wells Fargo and, in certain instances, except Defendant Powell:  theft of real property by financial fraud (Count One); negligence (Count Two); abuse of process (Count Three); and "gross, malicious, intentional, negligent, incompetent, reprehensible, unconscionable, and repeated infliction of physical, mental, and emotional distress" (Count Seven).   Plaintiffs have also brought the following claims against the Santander Defendants:  financial fraud, under 18 U.S.C. § 1005 (Count Four); mortgage fraud, under 18 U.S.C. § 1005 (Count Five); mail fraud, under 18 U.S.C. § 1341 (Count Six); age discrimination, under the Fair Housing Act, 42 U.S.C. §§ 3601–3631 *et seq.* (Count Eight); race discrimination, under the Fair Housing Act (Count Nine); redlining, under the Fair Housing Act (Count Ten); breach of contracts (Count Eleven); breach of oral contracts (Count Twelve); assumption of duty (Count Thirteen); breach of the covenant of good faith and fair dealing (Count Fourteen); violation of the Fair Debt Collection Practices Act ("FDCPA") (Count Fifteen); and false advertising under the Lanham Act (Count Twenty-One).  Plaintiffs allege the following claims against Powell and

Wells Fargo:  financial fraud, under 18 U.S.C. § 1005 (Count Sixteen); mail fraud, under 18 U.S.C. § 1341 (Count Seventeen); and retaliation by financial fraud, under 18 U.S.C. § 1005 (Count Eighteen).  Finally, Plaintiffs allege a financial fraud claim under 18 U.S.C. § 1005 against the Bendett & McHugh Defendants (Count Nineteen), and a conspiracy to commit financial fraud claim under 18 U.S.C. § 1005 against all Defendants (Count Twenty).

## II.   PROCEDURAL HISTORY

Plaintiffs initiated this action in January of 2022, and then moved to stay the action because Plaintiff Clark was also litigating two related matters in Connecticut state court.  ECF No. 44.  The Court denied the motion for a stay, and Plaintiffs filed the operative Amended Complaint in April of 2022.  ECF No. 72.  All Defendants moved to dismiss the Amended Complaint.  *See* ECF No. 82 (Bendett & McHugh Defendants' motion to dismiss); ECF No. 83 (Santander Defendants' motion to dismiss); ECF No. 87 (Wells Fargo Defendants' motion to dismiss).  In May of 2022, Plaintiffs moved for leave to file a Second Amended Complaint.  ECF No. 108.  These motions are addressed in this ruling.

Separately, the Court *sua sponte* raised a concern about whether Plaintiff Clark, as a *pro se* litigant, could represent the Estate of Lillian Clark in this action, and requested briefing from the parties on this issue.  *See* ECF No. 118.  The Court concluded, both initially and upon reconsideration, that Plaintiff Clark could not represent the Estate of Lillian Clark *pro se* because, although he is the executor of the estate, the estate has beneficiaries and creditors other than Plaintiff Clark, under the broad definition of the term "creditor" in Connecticut law.  ECF Nos. 133, 154, 159.  The Court therefore ordered Plaintiff Clark to obtain legal representation for the Estate Plaintiff by November 18, 2022, or the claims brought by the Estate Plaintiff would be dismissed. ECF No. 154.  The day before the dismissal was to take effect, Plaintiff Clark filed an

interlocutory appeal of this issue, ECF No. 172, along with an "emergency" motion to stay the district court proceedings pending the outcome of the appeal, ECF No. 174.  Given the filing of the interlocutory appeal, the Court did not formally dismiss the claims brought by the Estate Plaintiff.  The motion to stay the district court proceedings remains pending.

The Court declines to stay its proceedings during the pendency of the appeal, and therefore denies Plaintiffs' motion to stay.  "As a general matter, '[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'"  *United States v. Rogers*, 101 F.3d 247, 251 (2d Cir. 1996) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (alterations in original).  In this case, Plaintiff has filed an interlocutory appeal as to whether he may represent Lillian's estate *pro se*.  As to this issue, the Court has no jurisdiction.  *See id.* ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals.").  Because the Amended Complaint brings claims other than those brought on behalf of the estate, however, the Court retains jurisdiction to adjudicate those matters.

Thus, the Court must next consider whether stay the action, even as to claims brought on behalf of Plaintiff, while the appeal is pending.  The Court must consider four factors in determining whether to stay a case pending appeal:  "(1) likelihood of success in the appeal; (2) whether the requesting party would be irreparably injured without a stay; (3) whether a stay will substantially injure the other parties interested in the proceedings; and (4) the public interests at play."  *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018).  The first two factors "are the most salient concerns."  *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012).  Further, the factors are a "sliding scale" in which "the necessary level or

degree of possibility of success will vary according to the court's assessment of the other stay factors." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (cleaned up).  Finally, the moving party "bears the burden of proving that a stay should be granted, and stays pending an appeal are only granted in limited circumstances." *In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012).

The Court does not find that a stay is appropriate here.  First, Plaintiffs have not demonstrated a likelihood of success on appeal.  "The single most important factor is likelihood of success on the merits." *In re Baker*, No. 05-CV-3487 (CPS), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005).  In their reply brief in support of their motion to stay proceedings, Plaintiffs argue that the existence of the appeal proves its likelihood of success.  ECF No. 180 at 5.  However, as Defendants point out, there are open questions as to whether the Court's decision is final for purposes of appellate jurisdiction and, in any event, Second Circuit precedent appears to foreclose the merits of the issue.  Wells Fargo Memo. in Opp. To Motion to Stay, ECF No. 178 at 4–6 (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)).  For these reasons, Plaintiffs have not met their burden demonstrating a likelihood of success on appeal.

Second, Plaintiffs will not suffer irreparable injury without a stay.  The issue on appeal is not case dispositive:  Plaintiffs' remaining claims are distinct from those brought on behalf of the estate.  This weighs in favor of denying Plaintiffs' motion to stay.  *See Ferring B.V.*, 343 F. Supp. 3d at 291 (finding irreparable injury where pending appeal was dispositive).

Finally, while the "third and fourth factors are less critical than the first and second"—and Defendants make no arguments as to these factors—the Court will discuss both factors briefly. *Gabay v. Roadway Movers, Inc.*, No. 1:22-CV-6901 (JLR), 2023 WL 3569351, at *2 (S.D.N.Y. May 19, 2023) (citing *Meyer v. Valanick*, 203 F. Supp. 3d 393, 395 (S.D.N.Y. 2016)).  Concerning the third factor, the Court notes that whether a stay injures Defendants "depends on how long it

takes the Court of Appeals to render a decision on [Plaintiff's] interlocutory appeal, which no one can predict." *Meyer*, 203 F. Supp. 3d at 396.  The Court notes that appellees' brief was due in the Second Circuit on October 25, 2023, suggesting that the appeal is moving along.  Still, when it will be fully resolved is unknown.  Concerning the fourth factor, the Court finds that the public interest weighs against granting a stay because proceeding on Plaintiff Clark's non-appealed claims is an efficient use of judicial resources.

Thus, because the first two critical factors, and the fourth factor, weigh in favor of proceeding on the remaining claims, and because the third factor does not tip strongly in favor of either party, the Court denies Plaintiffs' motion to stay the proceedings.

As to how to proceed with the claims brought by the Estate Plaintiff, given that the issue of whether Plaintiff Clark may represent the estate of his late wife *pro se* is pending appeal, the Court proceeds with the ruling below as an indicative ruling under Federal Rule of Civil Procedure 62.1.  Specifically, the Court notes that it would grant Defendants' motions to dismiss the Estate Plaintiff's claims and deny the Estate Plaintiff's motion for leave to amend, if the Court of Appeals remands for that purpose, for the reasons explained below.

As the Court has denied Plaintiffs' motion to stay these proceedings, it will move forward with consideration of Defendants' motions to dismiss and Plaintiffs' motion for leave to amend the complaint.  In considering these motions, the Court is mindful of its duty to construe the pleadings of a *pro se* litigant liberally.  *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### III.    SUBJECT MATTER JURISDICTION

The Court first addresses Defendants' arguments concerning its subject matter jurisdiction.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (cleaned up).  A federal court must dismiss an action whenever it determines that it lacks subject matter jurisdiction over the action, Fed. R. Civ. P. 12(h)(3).  Federal courts have original jurisdiction over civil actions arising under the Constitution, laws, and treaties of the United States, 28 U.S.C. § 1331, and diversity jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between... citizens of different States[,]" 28 U.S.C. § 1332(a).  Here, Plaintiffs are not diverse from many of the Defendants, as they are all alleged to be Connecticut citizens.  Therefore, the Court's subject matter jurisdiction must arise from a federal question.  If claims that fall under the Court's original jurisdiction are dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).

Plaintiffs have alleged claims under various federal statutes:  18 U.S.C. §§ 1005 and 1341, the Fair Housing Act, the FDCPA, and the Lanham Act.  The Court therefore examines first whether Plaintiffs have alleged plausible claims under any of these statutes.  It concludes Plaintiffs have not.

### A.    Alleged Violations of Federal Criminal Statutes

First, Plaintiffs' causes of action brought under the federal criminal laws of the United States fail because these statutes do not create private rights of action.  Specifically, Plaintiffs assert claims for attempted theft by financial fraud in violation of 18 U.S.C. § 1005 (Count One), financial fraud in violation of 18 U.S.C. § 1005 (Counts Four, Sixteen, and Nineteen), mortgage

fraud in violation of 18 U.S.C. § 1005 (Count Five), mail fraud in violation of 18 U.S.C. § 1341 (Counts Six and Seventeen), retaliation by financial fraud in violation of 18 U.S.C. § 1005 (Count Eighteen), and conspiracy to commit financial fraud in violation of 18 U.S.C. § 1005 (Count Twenty).

It is well-established, however, that "federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (same). Plaintiffs' claims for financial fraud, mail fraud, mortgage fraud, retaliation through financial fraud, and conspiracy to commit financial fraud pleaded under the federal criminal statutes must therefore fail, because the federal criminal statutes Plaintiffs cite do not provide private rights of action.

Moreover, even if such claims were cognizable under common law fraud theories, causes of action alleging fraudulent conduct are subject to Rule 9(b)'s heightened pleading standard, which requires that a party alleging fraud "state with particularity the circumstances constituting the fraud or mistake." The Second Circuit has noted that one of the goals of Rule 9(b)'s heightened pleading standard is to "provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of defense." *DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987). Thus, when it comes fraud, "bare-bones allegations do not satisfy Rule 9(b)." *Lundy v. Cath. Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir. 2013). To satisfy Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *MacNaughton v. Young Living Essential Oils*, *LC*, 67 F.4th 89, 99 (2d Cir. 2023).

None of Plaintiffs' fraud claims meet this standard.  Specifically, Count One contains only conclusory allegations about alleged bad faith conduct by Santander and the Bendett Defendants. In Counts Four and Six, Plaintiffs allege only that Santander has "failed to validate the alleged debt and has continued to send monthly false and deceptive statements of account to the Plaintiffs." Am. Compl. Count Four ¶ 4, Count Six ¶ 4.  The Amended Complaint does not say how these actions or statements were fraudulent.  Conclusory allegations that the statements were false and fraudulent does not provide Defendants with sufficient notice to defend against the claim.

Count Five alleges that Santander is "knowingly attempting to foreclose on an admitted defective/invalid alleged mortgage that contains no valid legal property description and was not in default at the time." *Id.* Count Five ¶ 4.  It is unclear precisely what claim Plaintiffs assert through Count Five.  Connecticut law does not recognize a private cause of action for mortgage fraud.  *See Edwards v. McMillen Cap., LLC*, No. CV155008533S, 2016 WL 7196319, at *1 (Conn. Super. Ct. Nov. 4, 2016).  Even were this not the case, Count Five fails to provide any information regarding what statements Plaintiffs believe were fraudulent, why they were untrue, and who said them.  The same is true for Counts Sixteen, Seventeen, Eighteen, and Nineteen, which relate to Wells Fargo's alleged failure to open business checking accounts for Plaintiff Clark after his complaints of fraud, and Count Twenty, which relates to an alleged conspiracy by all Defendants to commit financial fraud.

Because Plaintiffs cannot use criminal statutes to assert a private cause of action under federal law, and because Plaintiff Clark's fraud claims fail to meet the heightened pleading requirements of Rule 9(b), Counts One, Four, Five, Six, Sixteen, Seventeen, Eighteen, Nineteen,

and Twenty must be dismissed.  This is an indicative ruling with respect to the Estate Plaintiff's claims.

### B.  Alleged Violations of Fair Housing Act

Next, Plaintiffs allege violations of the Fair Housing Act, claiming that Santander Bank and its executives—Defendants Powell, Wennes, Habis, and O'Neill—committed age discrimination against Lillian by denying her requested increases of credit on her home equity line of credit and denying her a personal loan when she was 92 years old, Am. Compl. at 29 (Count Eight); committed race discrimination against Plaintiff Clark, who is of Asian descent, by providing him bad customer service at a bank branch in Enfield, Connecticut, including by not returning his phone calls until an African-American bank manager prompted a return phone call to him, *id.* at 30–32 (Count Nine); and committed "redlining" by denying Lillian the increases in her home equity line of credit and a personal loan, *id.* at 32–33 (Count Ten).

These claims, too, fail at the threshold.  First, as to the allegations that Lillian was denied increases in her home equity line of credit and was denied a personal loan, Plaintiff Clark has no standing to assert these claims on Lillian's behalf.  The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  In that vein, federal court jurisdiction "can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (cleaned up).  Here, Plaintiff Clark cannot assert Lillian's claims for alleged age discrimination and redlining.

As an indicative ruling, the Court further notes that it would dismiss these claims if they are properly pursued by Plaintiff Clark in a *pro se* capacity representing the Estate Plaintiff, as

well.  For purposes of this indicative ruling, the Court assumes without deciding that the Estate Plaintiff has standing to pursue the age discrimination and redlining claims on behalf of Lillian. The Court treats the claims as brought under the Fair Housing Act, as that is how Plaintiffs have labeled them, and under the Equal Credit Opportunity Act ("ECOA"), which prohibits discrimination against any applicant for credit on the basis of, among other categories, age.  *See* 15 U.S.C. § 1691(a).  To state a claim for relief under Section 3605 of the Fair Housing Act, a plaintiff must plead that she is (1) a member of a protected class; (2) she attempted to engage in a "residential real estate-related transaction" and met all relevant qualifications for doing so; (3) that the defendant refused to transact business with the applicant despite her qualifications; and (4) that the defendant continued to engage in the type of transaction in question with other parties with similar qualifications.  *Johnson v. Citibank*, 234 F.3d 1262, at *2 (2d Cir. 2000) (summary order). A "residential real estate-related transaction" means, among other things, the "making or purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling" or "secured by residential real estate."  42 U.S.C. § 3605(b)(1).  The ECOA provides that it is unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a).

Regardless of the labeling, in order to survive dismissal, the Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However,

the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

Here, the Amended Complaint alleges in its age discrimination and redlining[4] counts only that Lillian, who was 92 years old, "had good credit," and had a home in a "working-class and blue-collar town," with "between $70,000 and $100,000 of additional home equity," yet Santander "repeatedly denied" her "an additional $10,000 increase on her HELOC, and also repeatedly denied her a $10,000 personal loan."  Am. Compl., at 29, 32–33.  The Amended Complaint lacks any details concerning Lillian's applications for these loans, including the dates when she applied for them and the reasons for the alleged denials.  As for the Fair Housing Act claim, it also fails to allege that Santander continued to conduct business with younger people.  Regarding the redlining claim, the allegations are vague and conclusory, and cannot support a plausible claim under either statute.  *See Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062 (PKC) (ST), 2018 WL 8369422, at *5 (E.D.N.Y. Aug. 10, 2018), *aff'd,* 811 Fed. Appx. 27 (2d Cir. 2020) (summary order) (holding that conclusory and speculative assertions that the plaintiff's membership in a protected class led to her being denied a loan and of "redlining" did not state a plausible claim).  Moreover, the Amended Complaint lacks any allegations about specific actions taken by the individual Santander Defendants, Wennes, Habis, and O'Neill.  Even drawing all inferences in favor of the Estate Plaintiff, the Court is unable to conclude that the sparse, conclusory allegations

---

[4] The Court construes the "redlining" as asserting that Lillian was not offered the loan increase or personal loan because of her property's location in a "working-class" and "blue-collar town," as the Amended Complaint asserts. The Court assumes, without deciding, that redlining can form the basis of a Fair Housing Act or ECOA violation.  As described above, the redlining claim fails for other reasons.

in the Amended Complaint state a plausible claim of discrimination by Santander or the individual Santander Defendants under either the Fair Housing Act or the ECOA.

Finally, Plaintiff Clark has alleged that Santander committed race discrimination against him under the Fair Housing Act because he is Asian and was subject to poor customer service at his local Santander Bank branch because of his race.  *See* Am. Compl. Count Nine.  Specifically, Plaintiff Clark alleges that various bank managers refused to listen to him when he attempted to inform them that there was an issue with the property taxes on the home.  *Id.* Count Nine ¶ 7.  This meant that Plaintiff Clark repeatedly returned to the local bank branch to complain about the tax issue until an African-American bank manager finally offered to help him.  *Id.* ¶ 9.  After receiving help, Plaintiff was finally able to resolve the property tax issue.  *Id.* ¶ 11.

These allegations fail to state a claim under the Fair Housing Act or the ECOA.  First, there are no allegations suggesting that Plaintiff Clark was attempting to engage in a residential real estate transaction or a credit transaction.  Additionally, aside from Plaintiff Clark's allegation that he is Asian and that the bank manager who ultimately helped him is African-American, there are insufficient allegations from which the Court could plausibly infer that he received poor customer service—to the extent such treatment could form the basis of a cognizable discrimination claim— on account of his race.  Finally, Plaintiff does not allege that the individual Santander Defendants were in any way involved in the actions alleged to be discriminatory.  The Court cannot conclude that the allegations of the Amended Complaint state a plausible race discrimination claim under the Fair Housing Act or the ECOA.

For these reasons, Counts Eight, Nine, and Ten against the Santander Defendants under the Fair Housing Act (and the ECOA) must be dismissed.  This is an indicative ruling with respect to the Estate Plaintiff's claims.

C.  Alleged Violations of the Fair Debt Collection Practices Act

Plaintiffs also allege that the Santander Defendants and Bendett Defendants have attempted to collect purported debts from Plaintiff by sending false and deceptive account statements to Plaintiff on a monthly basis, as well as repeatedly calling Plaintiff despite being asked in writing to discontinue calling him.  Am. Compl. Count Fifteen ¶¶ 4–5.  As this count is alleged against both the Santander Defendants and the Bendett Defendants, the Court will take the allegations against each in turn.

*1.  Santander Defendants*

Plaintiffs allege that Santander violated the FDCPA by collecting a debt that Plaintiffs owed directly to it.  Plaintiffs have failed to state a plausible claim against the Santander Defendants under the FDCPA.

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C § 1692e.  Crucially, under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted *to be owed or due another*."  15 U.S.C. § 1692a(6) (emphasis added).  A "creditor," by contrast, is fined as "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. § 1692a(4).  According to the Amended Complaint, Santander attempted to collect a debt owed directly to it.  Therefore, Santander did not act as a debt collector under the FDCPA, and Plaintiffs' claims against Santander in Count Fifteen fail as a matter of law.  *See Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject to the FDCPA").  Plaintiffs also do not allege any facts suggesting that

the individual Santander Defendants were involved in the alleged FDCPA violation, so the claim against them must also fail.  This is an indicative ruling with respect to the Estate Plaintiff's claim.

### 2. Bendett Defendants

While the Amended Complaint is less clear as to how an FDCPA claim relates to the Bendett Defendants, it appears Plaintiffs claim that the Bendett Defendants violated the FDCPA by instituting litigation on Santander's behalf to foreclose on the Clarks' home, despite knowing that such an action was improper.  The Bendett Defendants argue that any such claim is untimely, and the Court agrees.

An FDCPA claim must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  When an FDCPA claim is based on the commencement of litigation to collect a debt, the violation occurs on the date when the purportedly improper lawsuit is filed.  *See Costello v. Wells Fargo Bank NA*, No. 3:21-CV-01388 (VAB), 2022 WL 1912870, at *11 (D. Conn. June 3, 2022); *Egbarin v. Lewis, Lewis & Ferraro LLC*, No. Civ.A. 3:00-CV-1043 (JCH), 2006 WL 236846, at *9 (D. Conn. Jan. 31, 2006) ("FDCPA claims based on the filling of a lawsuit generally accrue when a claim is filed, not when judgment is rendered").  Here, the Amended Complaint alleges the underlying foreclosure action was filed on November 22, 2019. Am. Compl. ¶ 26.  The instant action was not filed until January 10, 2022, more than two years later.  Thus, any claims against the Bendett Defendants under the FDCPA are time barred and must be dismissed. Moreover, even were the claim not time-barred, the Amended Complaint's allegations are vague and conclusory, asserting only that the account statements—which it is far from clear the Bendett Defendants sent—were "false and deceptive," without describing *how* they were false and deceptive.  As a result, Count Fifteen fails in its entirety and all claims asserted thereunder are dismissed.  This is an indicative ruling with respect to the Estate Plaintiff's claim.

D. <u>Alleged Violations of the Lanham Act</u>

The final federal claim alleged by Plaintiffs is a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B) ("the Lanham Act").  Plaintiffs attach a screenshot of Santander's website and allege that Santander claims to have excellent customer service, but Plaintiffs claim they never received customer services approaching the level that Santander advertised.  Am. Compl. Count 21 ¶ 5.  The Lanham Act provides, in pertinent part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  Plaintiff claims Santander violated this provision through its advertising of better customer service than offered.

The Court will assume without deciding that Plaintiffs acted in reliance on Santander's website's representations when choosing to do business with Santander.  Even so, Plaintiffs' claims do not survive.  In *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129, 131–32 (2014), the U.S. Supreme Court discussed the class of persons whose interests "fall within the zone of interests protected by" the Lanham Act and concluded:  "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  Consumers are "not under the Act's aegis."  *Id.* at 132.  Put simply, the Supreme Court was clear that "a consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act."  *Id.*  As Plaintiffs are consumers seeking

18

to recover under the Lanham Act for allegedly false advertising by Santander, their claim in Count Twenty-One must be dismissed.[5]  This is an indicative ruling with respect to the Estate Plaintiff's claim.

### E.  Supplemental Jurisdiction

As set forth above, the Court has concluded that all of the federal claims in the Amended Complaint must be dismissed.  Thus, only Plaintiffs' state law claims remain, and the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claims.  A district court has supplemental jurisdiction over claims that "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  For purposes of § 1367(a), claims form part of the "same case or controversy" if they "derive from a common nucleus of operative fact."  *Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

If the claims form part of the same case or controversy, a district court retains discretion to decline to exercise supplemental jurisdiction only in certain limited circumstances:  when the state law claims raise novel or complex issues of state law; when such claims substantially predominate over the claims over which the district court has original jurisdiction; when the district court has dismissed all claims over which it has original jurisdiction; and, in exceptional circumstances, when there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c); *Shahriar*, 659 F.3d at 245 ("the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)") (emphasis in original).  Even where one of

---

[5] To be clear, as with each of the claims discussed herein, this ruling relates only to Plaintiffs' federal claim.  This ruling says nothing as to whether Plaintiffs do, or can, state a claim for false advertising, or any other potential claim, under state law; the Court holds only that Plaintiffs' claims, as far as they allege violations of federal law, fail to state a claim upon which relief can be granted.

the § 1367(c) factors is applicable, however, a district court "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity." *Id.* (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)) (citation omitted).

Although all of the claims over which this Court has original jurisdiction have been dismissed, the Court will exercise supplemental jurisdiction over the remaining state law claims. All of Plaintiffs' claims arise from the same general nucleus of operative fact related to the foreclosure on the Clarks' home. The Bendett Defendants urge the Court to decline supplemental jurisdiction, but do not analyze how the factors of economy, convenience, fairness, and comity apply here. Given that this case has been pending in this Court since January of 2022, economy considerations weigh in favor of the exercise of supplemental jurisdiction, rather than requiring the parties to start over in state court.

## IV.  PERSONAL JURISDICTION OVER DEFENDANTS WENNES, HABIS, AND O'NEILL

Before examining the remaining state law claims, the Court first addresses the argument of the individual Santander Defendants—Wennes, Habis, and O'Neill—that the Amended Complaint must be dismissed as to them because the Court lacks personal jurisdiction over them. The Court agrees, and dismisses these Defendants from this suit.

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to raise lack of personal jurisdiction as a defense through a motion to dismiss. A plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993). The showing a plaintiff must make "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). While a plaintiff

bears the "ultimate burden" of establishing jurisdiction over a defendant by a preponderance of the evidence, until an evidentiary hearing is held, the plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). This *prima facie* showing requires "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Here, neither party has requested, and the Court has not held, an evidentiary hearing. Thus, Plaintiffs are required to make only a *prima facie* showing that this Court possesses personal jurisdiction over the individual Santander Defendants.

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus., Inc.*, 806 F.2d at 365. Under the law of both the Connecticut Supreme Court and the Second Circuit, personal jurisdiction presents a two-step analysis: first, the Court must determine whether Connecticut's long-arm statute supports the Court's exercise of personal jurisdiction over the foreign defendant; second, the Court must determine whether such exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Thomason v. Chemical Bank*, 234 Conn. 281, 285–86 (1995) (stating that the Connecticut long-arm statute permits a trial court to exercise personal jurisdiction over a foreign defendant "only if the defendant's intrastate activities meet the requirements both of our statute and of the due process clause of the federal constitution"); *Chloé*, 616 F.3d at 163–64 ("To determine personal jurisdiction over a non-domiciliary . . . the Court must engage in a two-step analysis. . . . First, we apply the forum state's long-arm statute. . . . If the long-arm statute permits personal jurisdiction, the second step is to

analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.") (citations omitted).

In moving to dismiss the Amended Complaint, the individual Santander Defendants contend that Connecticut's long-arm statute does not support the Court's exercise of personal jurisdiction over them, and that, even if it did, such exercise of personal jurisdiction would violate the Fourteenth Amendment's Due Process Clause.  In response, Plaintiffs argue that the Court has personal jurisdiction over the individual Santander Defendants because Plaintiffs have filed suit against these Defendants in their "corporate capacities."  Opp. to Santander Defs.' Mot. to Dismiss, ECF No. 105 at 4.  The Court concludes that it does not have personal jurisdiction over Defendants Wennes, Habis, and O'Neill; the Amended Complaint's claims against these Defendants is dismissed.[6]

Connecticut's long-arm statute governing personal jurisdiction in suits against foreign individuals provides, in pertinent part, that a court may exercise personal jurisdiction over any nonresident individual who, in person or through an agent:

> (1) transacts any business within the state;
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
> (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
> (4) owns, uses or possesses any real property situated within the state; or
> (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

---

[6] Plaintiff also mentions "Defendant John or Jane Doe," an "unknown employee of Santander Bank, N.A.," who "placed a value on Lillian J. Clark's life of approximately 31 cents an hour," in the "Parties" section of the Amended Complaint.  *See* ECF No. 72 at 4.  As Plaintiffs have not identified the Doe Defendant and does not provide any specific factual allegations related to the Doe Defendant, that Defendant is likewise dismissed from this action.

Conn. Gen. Stat. § 52-59b(a).

The individual Santander Defendants contend that they fit none of these provisions, and that Plaintiffs' only allegations concerning them are that they vaguely conspired with others to steal the Clarks' home and allowed "harassing phone calls" to continue after being told to cease and desist.  Am. Compl., Count Fifteen, ¶ 5.  The Amended Complaint does not allege sufficient facts for the Court to find that the individual Santander Defendants transacted business in Connecticut, so as to satisfy the long-arm statute.  Section 52-59b(a)(1) "authorizes jurisdiction over nonresidents who transact any business within the state provided that the cause of action arises out of such transaction."  *New London Cnty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 745 (2012).  An individual transacts business under this section by engaging in "a single purposeful business transaction."  *Id.*  Plaintiffs have not adequately alleged a single purposeful business transaction conducted by any of the three individual Santander Defendants.  For instance, there are no particular allegations as to any of these Defendants' roles in the foreclosure of the Clarks' home.  Moreover, Plaintiffs have not plausibly alleged that these Defendants committed a tortious act either within or outside of the state, nor that they regularly do or solicit business, or engage in any persistent course of conduct or derive substantial revenue from goods used or services rendered in Connecticut.  Finally, Plaintiffs have not alleged that these Defendants own, use, or possess real property in Connecticut or use a computer or computer network within the State.  For these reasons, the exercise of personal jurisdiction under Connecticut's long-arm statute would be improper.

The exercise of personal jurisdiction over the individual Santander Defendants would, likewise, violate due process.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the individual] has established no meaningful contacts, ties, or relations."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–

72 (1985) (citation and internal quotation marks omitted).  For a court to exercise personal jurisdiction over a defendant consistent with constitutional due process, the defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).   The requisite minimum contacts may be satisfied in one of two ways: (1) the court may exercise *general* personal jurisdiction if the defendant's "affiliations with the [forum] State are so continuous and systematic as to render them essentially at home in the forum state"; or (2) the court may exercise *specific* personal jurisdiction if the action arises out of or relates to the defendant's contacts with the forum, even if such contacts are limited to a single or an occasional act within the forum.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations and internal quotation marks omitted).

Plaintiffs, for their part, argue that the Court may exercise personal jurisdiction over the individual Santander Defendants because Santander Bank, N.A. operates in Connecticut, and that the individual Santander Defendants operated as its agents in foreclosing on the Clarks' home. This argument misses the mark.  First, the focus must be on the individual Santander Defendants' conduct—not on that of Santander Bank itself.  There are no allegations in the Amended Complaint that rise to the level of asserting that the individual Santander Defendants' affiliations with Connecticut are so continuous and systematic as to render them "essentially at home" in Connecticut.  Indeed, all of the individual Santander Defendants are alleged to be citizens of Massachusetts. *See* Am. Compl. at 3–4.  Nor are there sufficient allegations to support the exercise of specific personal jurisdiction, as the Amended Complaint does not allege anything about the individual Santander Defendants' roles in the foreclosure process.

Plaintiffs' allegations against the individual Santander Defendants are simply too vague and nonspecific to make even a *prima facie* showing of personal jurisdiction. All claims against Defendants Wennes, Habis, and O'Neill are therefore dismissed under Rule 12(b)(2). This is an indicative ruling with respect to the Estate Plaintiff's claims.

## V.    REMAINING STATE LAW CLAIMS

The Court addresses each of the remaining state law claims below, grouping related claims into a single discussion where possible. Due to the nature of the claims, and their interplay with each other, the claims below are examined in roughly, though not precisely, the order they are asserted by Plaintiffs. The Court finds that all of the remaining state law claims are barred by the doctrines of *res judicata* (claim preclusion), collateral estoppel (issue preclusion), or should otherwise be dismissed because they fail to state a claim for relief.

### A. Preclusion

#### 1. *Legal Standard*

Pursuant to the U.S. Constitution's Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the corresponding Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In analyzing preclusion doctrines, a court must apply the preclusion law of the state that rendered the decision. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Thus, Connecticut law dictates the preclusive effect of a prior state action.

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum." *Carnemolla v. Walsh*, 75 Conn. App. 319, 327 (2003). Claim preclusion prevents a litigant from "reasserting a claim that has already been decided on the

merits," while issue preclusion prevents a party from "relitigating an issue that has been determined in a prior suit." *Id.* Issue preclusion is therefore "an aspect" of claim preclusion. *Id.* Both doctrines "protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." *Bruno v. Geller*, 136 Conn. App. 707, 721 (2012).

"The doctrine of [claim preclusion] holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Powell v. Infinity Ins. Co.,* 282 Conn. 594, 600 (2007). Essentially, "the modern rule of claim preclusion is that a judgment against the plaintiff is preclusive not simply when it is on the merits but when the procedure in the first action afforded the plaintiff a fair opportunity to get to the merits." *Weiss v. Weiss*, 297 Conn. 446, 459 (2010) (cleaned up).

A "transactional test" guides the application of claim preclusion. *Powell*, 282 Conn. at 604. Specifically, the claim that is extinguished by the judgment in the first action includes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* "What factual grouping constitutes a transaction is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understating or usage." *Orselet v. DeMatteo*, 206 Conn. 542, 545–46 (1988) (cleaned up).

### 2. *State Court Ruling*

Following a trial in the state court foreclosure action, the state court found, by a preponderance of the evidence, that Santander prevailed on its claims for reformation of the mortgage and foreclosure. *See* State Court Ruling, Bendett Defendants' Br. Regarding Collateral Estoppel, ECF No. 195-3. Specifically, the court found that the absence of a property description in the recorded mortgage documents was a mutual mistake given that the property at issue was identified in the note and the mortgage, and thus deemed reformation of the mortgage appropriate. *Id.* at 4–7. Next, as to the foreclosure count, the court found that Santander had proven the elements of foreclosure under Connecticut law: it was the owner of the note at the time it commenced the foreclosure action and the mortgagor, Lillian, had defaulted on her obligations under the note. *Id.* at 8–9.

The state court then proceeded to consider the Clarks' thirty special defenses[7] to determine whether any would defeat a finding of liability. *Id.* at 10. In its analysis, the state court noted that the typical defenses to a foreclosure action could be payment, discharge, release, satisfaction, or various equitable defenses, such unconscionability, abandonment of security, usury, and the mortgagor being prevented from fulfilling a condition of the mortgage on account of accident, mistake, or fraud. *Id.* While the Clarks advanced some of these typical defenses, they also advanced others, including several that exactly match Plaintiffs' causes of action in the instant suit,

---

[7] The special defenses asserted by the Clarks were: (1) failure to join an indispensable party; (2) admitted/invalid/defective/unenforceable alleged mortgage; (3) defendant [Gordon Clark] is valid, secured and enforceable first lien position; (4) accord and satisfaction; (5) consent; (6) negligence; (7) contributory negligence; (8) promissory estoppel; (9) equitable estoppel; (10) laches; (11) failure to state a claim upon which relief can be granted; (12) financial fraud; (13) mortgage fraud; (14) mail fraud; (15) lack of standing; (16) lack of subject matter jurisdiction; (17) payment; (18) multiple breaches of contract; (19) multiple breaches of novated (oral) contract; (20) release; (21) discharge; (22) waiver; (23) sham complaint; (24) statute of frauds; (25) statute of limitations; (26) illegality; (27) abandonment of alleged security; (28) unclean hands; (29) violation of the fair debt collection practices act; and (30) violation of the Connecticut Unfair Trade Practices Act. ECF No. 195-2 at 3–26; ECF No. 195-3 at 11–12.

such as "negligence," "financial fraud," "mortgage fraud," "mail fraud," "multiple breaches of contract," "multiple breaches of novated (oral) contract," and "violation of the [F]air [D]ebt [C]ollection [P]ractices [A]ct." *Id.* at 11–12. Other special defenses asserted by the Clarks included "sham complaint," "illegality," "and unclean hands." *Id.* Ultimately, the state court rejected all of the special defenses, concluding that the Clarks had not met their burden of proof as to any. *Id.* at 12.

### 3. Discussion

The Court finds that claim preclusion applies to bar those claims in the instant action that are duplicative of the Clarks' special defenses in the state court action, because the federal action arises out of the same set of transactions as the Clarks' defenses in the state action. In particular, the Clarks' defenses in the state action related to allegedly improper actions by the Bendett Defendants on behalf of Santander to foreclose on the property. In this action, Plaintiffs are pursuing affirmative claims based on the same allegedly improper actions by Santander and the Bendett Defendants. Indeed, several of Plaintiffs' claims in this action exactly mirror their affirmative defenses in the state action. The state court adjudicated the merits of those special defenses, finding that the Clarks had not supplied any evidence to support those claims. Because both actions involve the same parties and reiterate many of the same legal theories based on the same factual assertions, applying claim preclusion promotes judicial economy by preventing inconsistent judgment with the state court and by preventing Plaintiffs from harassing Santander and the Bendett Defendants with a duplicative lawsuit. Thus, to the extent any of Plaintiffs' claims

arise out of the same operative facts as the state court action—or rely on similar legal theories as to the affirmative defenses—claim preclusion applies.[8]

    B.  Count Two:  Negligence

Count Two alleges that all Defendants, except Wells Fargo, were negligent.  Plaintiffs allege that these Defendants have a "moral and lawful duty to act with reasonable care towards their fellow man/woman" and breached that duty.  Am. Compl. at 25 (Count Two).  The only specific factual allegation in this count is that Santander Bank caused the alleged default by sending the "threatening, erroneous foreclosure letter . . . and by their unwillingness and willful negligent incompetence to rightfully" withdraw the letter after being repeatedly asked by Plaintiffs. *Id.*

As discussed above, claim preclusion applies to Plaintiffs' negligence claim because it is nearly identical to the negligence-based affirmative defense the Clarks presented at state court: both assert negligence against Santander for "sending a threatening *erroneous foreclosure letter*." ECF No. 72 at 25; ECF No. 195-2 at 7.  Thus, because the state court adjudicated this claim and rejected it, claim preclusion prevents Plaintiffs from relitigating the claim in federal court.

Further, to the extent the claim applies to Santander's conduct in the state court action itself, the claim is barred under the litigation privilege doctrine.  The Connecticut Supreme Court "has established a rule of 'absolute immunity,'" also referred to as the "litigation privilege," which "protects the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort claims."  *Costello v. Wells Fargo Bank Nat'l*

---

[8] The Court recognizes that the Clarks were positioned as defendants in the state court action and are positioned as plaintiffs in this action.  Because the Clarks bore the burden of proof on their special defenses in the state court action, however, the Court considers those defenses as akin to affirmative claims, for claim preclusion purposes.  As the state court found that the Clarks had presented no evidence sustaining their defenses and therefore entered judgment against them, the rationale behind claim preclusion—conserving resources and avoiding duplicative litigation—applies here.

*Ass'n*, No. 16-CV-1706 (VAB), 2017 WL 3262157, at *14 (D. Conn. July 31, 2017) (citing *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 627 (2013)), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) (summary order).  "The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."  *Scholz v. Epstein*, 341 Conn. 1, 10 (2021).  Federal courts in Connecticut "routinely apply the state's litigation privilege to claims that challenge representations made in underlying state court litigation."  *Weldon v. MTAG Servs., LLC*, No. 3:16-CV-783 (JCH), 2017 WL 776648, at *10 (D. Conn. Feb. 28, 2017).

The litigation privilege applies to claims "premised on factual allegations that challenge the defendant's participation in a properly brought judicial proceeding."  *Scholz*, 341 Conn. at 14. In applying the litigation privilege to such claims, the Connecticut Supreme Court has reasoned that these causes of action do not "involve consideration of whether the underlying purpose of the litigation was improper" and, as a result, they are "entitled to absolute immunity, even if the plaintiff alleges that the [defendant's] conduct constituted an improper use of the courts."  *Id.* Relevant here, the Connecticut Supreme Court has favorably cited law applying the doctrine to common law negligence claims.  *See Simms v. Seaman*, 308 Conn. 523, 567 (2013) (citing *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401–02 (D.N.J. 2009) (applying litigation privilege to a negligence claim)).  To the extent Plaintiffs premise Count Two on the foreclosure suit initiated by Defendants, Count Two is barred by the litigation privilege doctrine.

Count Two also fails to state a cognizable claim for relief.  Initially, the count only contains specific allegations against Santander; as it fails to explain how any other Defendant may have been negligent, it cannot stand as against any other Defendant.  Moreover, it is wholly conclusory

in alleging the allegations of duty, breach of duty, and causation as to all defendants.  Its allegations are merely legal conclusion masquerading as factual allegations, and therefore must fail.  *See Iqbal*, 556 U.S. at 678.  This is an indicative ruling with respect to the Estate Plaintiff's claim.

### C.   Count Three:  Abuse of Process

In Count Three, Plaintiffs allege that the Santander Defendants and the Bendett Defendants committed abuse of process by threatening or filing "a foreclosure lawsuit against the Plaintiffs" without a "legitimate, lawful, []or legal basis . . . ."  Am. Compl. Count Three.  The Court dismisses Count Three.[9]

First, as discussed above, claim preclusion applies to bar Count Three.  Though labeled as financial fraud, the Clarks' twelfth special defense in the state court action is nearly identical to Plaintiffs' abuse of process allegations in Count Three.  The state court rejected all the Clarks' special defenses, including the twelfth special defense, in state court.  Because Count Three is nearly identical to the twelfth special defense that the state court rejected, and because Plaintiffs' federal action arises out of claims and facts that were adjudicated in the state case, Count Three is barred under claim preclusion.

Even if Count Three were not barred under claim preclusion, however, Plaintiffs fail to state a claim for relief.  "An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'"  *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (quoting *Varga v. Pareles*, 137 Conn. 663, 667 (1951)).  Plaintiffs' dispute with the merits of the foreclosure action does not give rise to a claim that Santander or the Bendett Defendants used the action in an improper manner to accomplish a purpose for which it was not designed.  In fact, as Santander points out, Santander

---

[9] The Court notes that Connecticut courts do not apply the litigation privilege doctrine to claims for abuse of process. *Scholz*, 341 Conn. at 10.

has a legitimate purpose behind its state court foreclosure action:  "attempting to recover money

owed on a defaulted HELOC loan."  ECF No. 84 at 17.  Plaintiffs allegations that Santander and

the Bendett Defendants committed abuse of process because the Defendants "ha[d] no legitimate,

lawful, []or legal basis" to foreclose against him are simply conclusory legal statements,

unsupported by the factual allegations in the complaint.  Am. Compl. Count Three.  Thus, Plaintiffs

fail to state a claim for relief under Count Three.  This is an indicative ruling with respect to the

Estate Plaintiff's claim.

      D.   <u>Counts Eleven through Fourteen:  Breaches of Contract, Assumption of Duty,
and Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

     Plaintiffs asserts a series of common law and breach of contract claims against the

Santander Defendants.  Am. Compl. Counts Eleven through Fourteen.  These claims must be

dismissed because they are barred under the doctrine of claim preclusion.  Further, Count Fourteen

is barred under the litigation privilege doctrine.  And even if the claims were not barred, Plaintiffs

also fail to state a claim for relief as to these counts.

*1. Claim Preclusion and Litigation Privilege*

     In Count Eleven, Plaintiffs allege Santander "breached [its] moral and lawful duty" to not

breach their contract.  In support of Count Eleven, Plaintiffs allege that Santander failed to:  (1)

"give proper notice of default;" (2) "send a legal breach letter;" (3) "give at least 30 days to cure

alleged default;" (4) "make contractual absolute obligation advances;" and (5) "change payments

to interest only upon request."  *Id.*  In Count Twelve, Plaintiffs allege Santander "breached [its]

moral and lawful duty to not breach their" oral contract to "pay back when you can;" in Count

Thirteen, Plaintiffs allege Santander beached its "assumed [] duty/obligation/agreement" to allow

Plaintiffs to "pay back when [they] can;" and in Count Fourteen, Plaintiffs allege that Santander

Defendants breached the "implied covenant of good faith and fair dealing" by making misrepresentations to the state court.  Am. Compl. Counts Eleven–Fourteen.

The Clarks advanced similar claims as special defenses in the state action.  The Clarks' eighteenth special defense asserted "multiple breaches of contract," their nineteenth special defense asserted that the Santander Defendants breached their oral contract to allow the Clarks to "pay back when [they] can;" and the Clarks' twenty-eighth defense asserted that the Santander Defendants breached the contract and their "implied duty of good faith and fair dealing."  ECF No. 195-2 at 20, 23–24.

The court in the state action considered these defenses and rejected all of them.  As to the oral contract between Plaintiffs and the Santander Defendants, the state court held that the Clarks "failed to meet the burden of proof as it relates to these special defenses."  ECF No. 195-3 at 13. In particular, the court noted that the Connecticut Statute of Frauds does not enforce oral agreements related to real estate.  *Id.* (citing Conn. Gen. Stat. § 52-550(a)).  As to the remainder of the special defenses, including the Clarks' defenses related to alleged contract violations, "there simply was no evidence offered to support the defenses."  *Id.*

As discussed above, the federal action arises out of the same transaction as the state action. As such, because Plaintiffs had the opportunity to litigate these claims at the state court, and because the state court rejected them in hand, claim preclusion applies.  Further, as discussed above, the issues in this case are identical to  the issues raised in the special defenses—the Clarks essentially reproduced their contract claims in this action as special defenses in the state action.

For these reasons, Counts Eleven through Fourteen in the Amended Complaint must be dismissed on claim preclusion grounds.

Further, Count Fourteen is barred under the litigation privilege doctrine. As discussed above, the litigation privilege extends to statements and actions made during the course of litigation. Count Fourteen is based on allegedly dishonest statements made by Defendants during the course of the state case. For the same reasons discussed above, the litigation privilege applies, and Plaintiffs are barred from bringing Count Fourteen. This ruling is indicative as to the Estate Plaintiff's claims.

### 2. Failure to State a Claim

Even assuming they were not barred by claim preclusion, Plaintiffs fail to state a claim for relief in Counts Eleven through Fourteen.

First, Plaintiffs' claims for breach of alleged oral contracts in Counts Twelve and Thirteen fail to state a claim for relief because oral contracts regarding real estate are unenforceable under the Connecticut Statute of Frauds. Conn. Gen. Stat. § 52-550(a).

Next, Count Eleven, alleging "multiple breaches of contract," similarly fails to state a claim for relief because Plaintiffs' allegations are conclusory and Plaintiffs have not alleged any basis for relief. Plaintiffs allege that the Santander Defendants breached a contracted by failing to: (1) "give proper notice of default;" (2) "send a legal breach letter;" (3) "give at least 30 days to cure alleged default;" (4) "make contractual absolute obligation advances;" and (5) "change payments to interest only upon request." Am. Compl. Count Eleven. However, Plaintiffs include no information regarding the contract or contractual provisions that Defendants may have violated. Rather, Plaintiffs urge the Court to accept their conclusion that Santander violated a contractual provision without providing any information as to the legal basis for relief or factual circumstances

supporting their claim.  Without any factual allegations supporting a legal basis for their claims, Plaintiffs' allegations fail.

Count Fourteen, alleging breach of the implied covenant of good faith and fair dealing, fails because Plaintiffs do not have a viable breach of contract claim.  *See Conn. Children's Med. Ctr. v. Continental Casualty Co.*, 581 F.Supp.3d 385, 393 (D. Conn. 2022); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014) ("In the absence of a breach of an express duty under the [contract], however, there is no independent cause of action for the breach of the implied covenant of good faith and fair dealing.").

The Court thus dismisses Counts Eleven through Fourteen in their entirety.  This is an indicative ruling with respect to the Estate Plaintiff's claims.

### E.  Count Seven:  Emotional Distress

In Count Seven, Plaintiffs allege that the Santander Defendants and the Bendett Defendants committed "gross, malicious, intentional, negligent, incompetent, reprehensible, unconscionable, and repeated infliction of physical, mental, and emotional distress, pain, and suffering."  Am. Compl. Count Seven.  The Court dismisses Count Seven because Plaintiffs fail to state a basis for relief.

While it is unclear what cause of action Plaintiffs bring in Count Seven, construing the allegations liberally, the Court understands Plaintiffs to bring claims for intentional and negligent infliction of emotional distress.

#### 1.  *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiffs must plausibly allege:  "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was

extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Strano v. Azzinaro*, 188 Conn. App. 183, 187 (2019).

First, Plaintiffs' claim for intentional infliction of emotional distress is barred by claim preclusion. In the state court action, the Clarks claimed that Santander "knowingly, intentionally, purposely, and maliciously filed an erroneous, baseless, meritless, frivolous, bad faith, and fraudulent/sham foreclosure lawsuit." ECF 195-2 at 17. Then, as part of the Second Special Defense, the Clarks asserted that because of Santander's "unconscionable" conduct that Lilian succumbed to death because of the "extremely painful, stressful, and heartbreaking ordeal." *Id.* at 29. This is essentially an IIED claim. And because claim preclusion applies to facts and issues decided in the state case—and those that arise out of the same transaction—Plaintiffs' IIED claim is barred.

Second, the claim is barred under the litigation privilege doctrine. Connecticut courts regularly apply the litigation privilege to IIED claims that are based on statements and actions made during the course of litigation. *See Dorfman v. Smith*, 342 Conn. 582, 592 (2022) (noting that "absolute immunity extends to an array of retaliatory civil actions," including "intentional infliction of emotional distress arising from statements made during judicial proceedings"); *Simms*, 308 Conn. at 570 (holding that litigation privilege barred a plaintiff's claim of intentional infliction of emotional distress); *Stone v. Pattis*, 144 Conn. App. 79, 99 (2013) ("We conclude . . . that the allegations supporting [the] claim of negligent infliction of emotional distress are based on communications protected by absolute immunity from suit."). Plaintiffs base Count Seven on the actions of the Defendants in litigating the foreclosure and default action. ECF No. 72 at 28–29

(Count Seven).  Because Plaintiffs cannot base an IIED claim on statements and actions made during the course of litigation, the litigation privilege doctrine bars Count Seven.

Finally, Count Seven fails to state a claim for relief.  The only conduct Plaintiffs could point towards is the foreclosure action initiated by the Santander Defendants, but Plaintiffs cannot demonstrate that a routine foreclosure action rises to the level of "extreme and outrageous" conduct necessary to maintain an IIED action.  *See Heim v. Calif. Fed. Bank*, 78 Conn. App. 351, 371 (2003) ("The act of filing a lawsuit, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior or make the average member of the community raise their hand and exclaim, 'Outrageous!'.").  For these reasons, Plaintiffs' fail to state a claim for relief for IIED. This is an indicative ruling with respect to the Estate Plaintiff's claims.

### 2. *Negligent Infliction of Emotional Distress*

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must plausibly allege:  "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

This claim, like the IIED claim, is barred by claim preclusion, for the same reasons described above.  Plaintiffs' NIED claim is also barred under the litigation privilege doctrine. "Connecticut appellate courts have consistently held that claims of negligent infliction of emotional distress premised on communications made during and relevant to an underlying judicial proceeding are afforded absolute immunity."  *Dorfman*, 342 Conn. at 612–13.  Just as Plaintiffs' IIED claim is barred by the privilege doctrine, so too is their NIED claim, which is

based on the same facts alleged in Count Seven.  For these reasons, the entirety of Count Seven is barred by the litigation privilege doctrine.

Further, Plaintiffs' NIED claim fails to state a claim for relief because neither the Santander nor the Bendett Defendants created an *unreasonable* risk of causing Plaintiffs emotional distress by filing the foreclosure action.  The foreclosure action is an appropriate legal mechanism for asserting repossession of the property when a term of the mortgage has been breached.  Even taking as true Plaintiffs' pleadings that Plaintiffs suffered emotional distress—and acknowledging that the loss of a home could certainly cause significant stress—Plaintiffs' NIED claim must fail because it was not "foreseeable that the [Plaintiffs] *reasonably* would suffer severe emotional distress beyond that normally associated with litigation."  *Wilson v. Jefferson*, 98 Conn. App. 147, 163 (2006).  The Santander Defendants' use of the legal process to enforce their property rights—without more—cannot constitute NIED.  *See id.*

Thus, the Court dismisses Count Seven.  This is an indicative ruling with respect to the Estate Plaintiff's claim.

### F.   In Sum

In summary, none of Plaintiff's remaining state law claims survive dismissal.  As an indicative ruling, the Court finds that none of the Estate Plaintiff's remaining state law claims survive dismissal, either.  There being no viable claims, the Amended Complaint is dismissed in its entirety as to Plaintiff, and, as an indicative ruling, would be dismissed in full as to the Estate Plaintiff as well.

## VI.   MOTIONS TO AMEND

In addition to the pending motions to dismiss, Plaintiffs have filed two separate motions to amend the complaint.  As the Court has not yet entered a scheduling order, these motions to amend

are governed by Federal Rule of Civil Procedure 15(a)(2).  That rule provides that a party may amend its pleading with the opposing party's consent or the court's leave, and further provides that the court "should freely give leave when justice so requires."  *Id.*  Rule 15(a)(2) "is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, [or] futility."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (alteration in original; citation and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 1112 (2022).

Relevant here, a proposed amendment is considered futile if it "fails to state a claim or would be subject to a successful motion to dismiss on some other basis."  *Nwachukwu v. Liberty Bank*, No. 3:16-CV-704 (CSH), 2016 WL 3647837, at *2 (D. Conn. July 1, 2016) (citing, among others, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  *See also Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 99 (2d Cir. 2010) (affirming district court's denial of leave of amend complaint as futile because the proposed amended complaint did not cure the original complaint's subject matter jurisdictional defects); *Blanchard v. Doe*, No. 17-CV-6893 (PKC) (JO), 2019 WL 2211079, at *3–4 (E.D.N.Y. May 22, 2019) (denying leave to amend complaint because proposed amended claims would fail due to the defendants' official immunities and reasoning that "an amendment is futile if it would fail to state a plausible claim for relief or if an affirmative defense, *e.g.*, the defendant's immunity, is apparent").

Thus, a proposed amended complaint is futile "if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente*, 310 F.3d at 258.  "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an

entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Plaintiffs have filed two motions to amend their complaint to add four additional defendants and assert new counts against defendants both new and old. The Court will address each proposed amended complaint in turn.

A.   Plaintiffs' First-Proposed Amended Complaint

Plaintiffs filed their first motion for leave to amend on May 31, 2022. The Court will refer to this proposal as the May 31, 2022 Proposed Amended Complaint ("PAC"). Plaintiffs propose to add five additional defendants—Defendant Ridgely Whitmore Brown and Defendant Law Office of Ridgely Whitmore Brown (together "the Ridgely Defendants"); Defendant Sean R. Higgins and Defendant K&L Gates, LLP (together "the K&L Gates Defendants"); and Defendant Wells Fargo, N.A.—and seven additional counts (Counts Twenty-Two through Twenty-Eight). ECF No. 108 at 4; ECF No. 108-1 at 1–2. Plaintiffs add no relevant new allegations to their statement of facts. Instead, Plaintiffs include under each count new facts relevant to Plaintiffs' new claims. Therefore, the Court will walk through each count in Plaintiffs' May 31, 2022 PAC.

As to Counts One through Twenty-One, Plaintiffs bring the same counts and allegations as in the operative complaint. To the extent the Court has already discussed how Plaintiffs cannot bring these claims or have failed to state a claim for relief, the same analysis applies to the May 31, 2022, PAC. For the reasons already discussed, these counts are futile.

In Count Twenty-Two, Plaintiffs bring a "Breach of Confidence" claim against the Ridgely Defendants for discussing the federal case with opposing counsel. ECF No. 108-1 at 48–53. A breach of confidence claim arises in the context of an attorney-client relationship, wherein "[e]very

client has a right to expect that his lawyer will not disclose his secrets." *Goldberg v. Corporate Air, Inc.*, 189 Conn. 504, 512 (1983), *rev'd on other grounds*, *Burger & Burger, Inc. v. Murren*, 202 Conn. 660 (1987). Assuming Plaintiffs had established an attorney-client relationship for the purposes of the presumption for the right of confidence,[10] Plaintiffs cannot establish that the Ridgely Defendants breached that confidence. Even drawing all inferences in Plaintiffs' favor, none of the alleged communications between the Ridgely Defendants and opposing counsel indicate that the Ridgely Defendants divulged any confidences. Thus, Count Twenty-Two is futile for failure to state a claim.

In Count Twenty-Three, Plaintiffs bring an invasion of privacy claim against the K&L Gates Defendants for the same communications that formed the basis of Plaintiffs' Count Twenty-Two. ECF No. 108-1 at 53–58. Connecticut law recognizes four categories that may form the basis of an invasion of privacy claim: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 128 (1982).

Plaintiffs do not explain under which category they bring their invasion of privacy claim. The Court notes that Plaintiffs allegations obviously cannot support a claim for the final three categories. Further, the Court finds that Plaintiffs cannot state a claim for unreasonable intrusion. While Connecticut courts have yet to firmly establish the elements of this cause of action, they turn to the Restatement, which explains that to state a claim for unreasonable intrusion a plaintiff must allege "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion

---

[10] The Court notes that Plaintiffs deny establishing any attorney-client relationship with Attorney Ridgely. Without an attorney-client relationship, Plaintiffs cannot bring a breach of confidence claim.

of his privacy, if the intrusion would be highly offensive to a reasonable person." *Parnoff v. Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 172 (2019) (quoting Restatement (Second) of Torts § 652B). Plaintiffs cannot establish that the K&L Defendants intruded into the seclusion of another or that any intrusion was highly offensive. First, the K&L Defendants merely communicated with an attorney who appeared to potentially be opposing counsel, which does not rise to the level of an intrusion. Second, run-of-the-mill conferencing with opposing counsel, while obviously distressing to Plaintiff Clark, is not highly offensive to a reasonable person. Accordingly, the Court finds that proposed Count Twenty-Three is futile for failure to state a claim.

In Count Twenty-Four, Plaintiffs bring a tortious interference claim against the K&L Defendants for the same communications that formed the basis of the previous two claims. ECF No. 108-1 at 58–62. To state a claim for tortious interference, Plaintiffs must allege: "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 255 Conn. 20, 27 (2000). Plaintiffs fail to state a claim for relief because Plaintiffs never established the requisite business relationship with the Ridgely Defendants to form the basis of a tortious interference claim. In fact, Plaintiffs disclaim as much. However, even if the Court assumes Plaintiffs satisfy the first element, Plaintiffs cannot establish the other two. The K&L Defendants' normal communications with potential opposing counsel cannot be construed as interfering with Plaintiffs' business relationship with the Ridgely Defendants. The K&L Defendants engaged in routine discussions with opposing counsel as to the contours of the case. And even if the Court assumes the K&L Defendants' actions constitute interference, Plaintiffs cannot demonstrate harm caused by the K&L Defendants. Plaintiffs have alleged that they would not hire the Ridgely

Defendants after learning that the Ridgely Defendants had reached out the K&L Defendants. Thus, it was not the K&L Defendants that harmed Plaintiffs, but Plaintiffs' own decision not to hire counsel. For these reasons, Count Twenty-Four is futile for failure to state a claim.

In Count Twenty-Five, Plaintiffs bring a civil conspiracy claim against the four new defendants based on the same communications. ECF No. 108-1 at 63–67. "The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 266 Conn. 747, 779 (2003) (internal quotation marks omitted). "There is, however, no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Property and Cas. Corp.*, 277 Conn. 617, 636 (2006) (quoting *Harp*, 266 Conn. at 779 n.37). Because, as discussed above and below, Plaintiffs cannot sustain *any* independent tort claim, Plaintiffs cannot bring an action for civil conspiracy.

In Count Twenty-Six, Plaintiffs bring a conspiracy to interfere with civil rights claim under 42 U.S.C. § 1985 for the same communications between the four new defendants. ECF No. 108-1 at 67–72. "The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp*, 7 F.3d 1085, 1087 (2d Cir. 1993). First, Plaintiffs cannot establish a conspiracy. None of the communications

between the four defendants evidences or raises the suspicion of any agreement between the parties. Rather, the emails and voice-messages reflect normal communications between opposing parties that occur in the course of litigation. Second, Plaintiffs have not indicated, nor has the Court identified, any denial of equal protection of the laws. Rather, as discussed above, the communications reflect normal discussion had by attorneys during the course of litigation. Thus, the Court finds Count Twenty-Six futile because Plaintiffs have failed to state a claim for relief.

In Count Twenty-Seven, Plaintiffs bring an abuse of process claim against the four new defendants for the same communications. ECF No. 108-1 at 72–77. "An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'" *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (quoting *Varga v. Pareles*, 137 Conn. 663, 667 (1951)). Because the four new defendants only engaged in out of court communications, Plaintiffs cannot bring an abuse of process claim against those defendants for those communications. For these reasons, the Court finds that Count Twenty-Seven is futile for failure to state a claim for relief.

In Count Twenty-Eight, Plaintiffs bring a legal malpractice claim against the four defendants for the same communications. ECF No. 108-1 at 77–81. "Generally, a plaintiff alleging legal malpractice must prove all of the following elements: '(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) *causation*; and (4) damages.'" *Bozelko v. Papastavros*, 323 Conn. 275, 283 (2016) (quoting *Grimm v. Fox*, 303 Conn. 322, 329 (2012)) (emphasis in original). First, as discussed above Plaintiffs cannot establish an attorney-client relationship with the K&L Defendants. Further, Plaintiffs have specifically disclaimed an attorney-client relationship with the Ridgely Defendants. Second, even if the Court assumes an attorney-client relationship, Plaintiffs have not alleged a wrongful act or admission

given that Plaintiffs have alleged that the four defendants engaged in everyday communications that arise during the course of litigation.  Finally, Plaintiffs have not explained how they were injured as a result of these communications, nor how the communications caused that injury. Plaintiffs themselves chose not to retain counsel—thus any injury from lack of counsel is self-imposed.

In sum, the Court finds that the entirety of Plaintiff Clark's first-proposed Second Amended Complaint is futile for failure to state a claim.  This ruling is indicative as it applies to the Estate Plaintiff's claims.

### B.  Plaintiffs' Second-Proposed Amended Complaint

Plaintiffs offered a second-proposed Second Amended Complaint on October 17, 2022, which the Court will refer to as the October 17, 2022 PAC.  In this PAC, Plaintiffs remove all four new attorney defendants added in the first-proposed complaint, while still adding Defendant Wells Fargo Bank, N.A.  ECF No. 152 at 1–2.  Plaintiffs also remove five counts—Breach of Confidence, Invasion of Privacy, Tortious Interference, Civil Conspiracy, and Abuse of Process—and add two new counts—Wrongful Death, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").  *Id.* at 2.

First, to the extent Plaintiffs have not substantively changed any of the counts alleged in the operative complaint or the May 31, 2022, PAC, the Court denies these amendments as futile for all the reasons already discussed.

Second, Plaintiffs bring a new claim under Count Two for the wrongful death of Lillian against all Defendants except the Wells Fargo Defendants.  ECF No. 152-1 at 26–27.  The Court notes that no common law wrongful death action exists—the cause of action exists solely to the extent allowed by statute.  *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 109 n.34 (2019).

Assuming Plaintiffs bring their claim under the wrongful death statute, the Court finds that Plaintiffs fail to state a claim for relief, principally because Plaintiffs' allegations do not support the inference that Defendants' actions prematurely caused the death of Lillian.  As Plaintiffs have alleged, Lillian suffered from Parkinson's disease for many years before succumbing to the illness at age 92.  Plaintiffs have not explained how Defendants' actions *caused* the premature or untimely death of Lillian Clark.

Finally, Plaintiffs bring a new claim under Count Twenty-Five for violations of CUTPA against all Defendants.  ECF No. 152-1 at 47–48.  Plaintiffs allege the Defendants violated CUTPA by interfering with Plaintiffs' property rights in the foreclosed home.  *Id.*  Under the CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  Plaintiffs argue that Defendants have violated these provisions through the default and foreclosure action.  However, as the Court has discussed in the context of Plaintiffs' numerous other counts, Plaintiffs have not identified any unfair or deceptive act on the part of Defendants.  Rather, Defendants engaged in routine foreclosure proceedings and default actions in foreclosing on Plaintiffs' property.  For these reasons, the Court finds that County Twenty-Five is futile for failure to state a claim.

In sum, for all the reasons discussed above, the Court finds that Plaintiffs' October 31, 2022, PAC is futile for failure to state a claim.  This ruling is indicative as to the Estate Plaintiff's claims.

## C.  Granting Plaintiffs a Chance to Amend

Despite the Court denying leave to amend, the Court recognizes that a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  As Plaintiffs now have the benefit of the Court's rulings as to their

claims, the Court finds that they should be allowed one opportunity to amend their complaint in an effort to remedy the deficiencies addressed in this ruling. Thus, Plaintiffs may file an amended complaint by **November 27, 2023**, without seeking leave of Court, but must consult with the Federal Pro Se Program to draft such an amended complaint. Plaintiffs shall title their amended complaint "Fourth Amended Complaint" for ease of reference, and are warned that they should not include in any amended complaint any claims under the federal criminal statutes or any claims that are barred by preclusion doctrines or the litigation privilege. Should Defendants believe that the claims in the Fourth Amended Complaint are subject to dismissal, they may file motions to dismiss.

## VII.    CONCLUSION

For the reasons discussed herein, Defendants' motions to dismiss—ECF Nos. 82, 83, and 84—are GRANTED as to Plaintiff Clark. As an indicative ruling, the Court holds that it would also grant the motions to dismiss as to the Estate Plaintiff's claims. Plaintiff Clark's motion to stay these proceedings pending the appeal, ECF No. 174, is denied; to the extent necessary, as an indicative ruling, the Court holds that it would also deny the motion to stay proceedings as to the Estate Plaintiff. Finally, Plaintiff Clark's motions for leave to amend the complaint, ECF Nos. 108 and 152, are denied. As an indicative ruling, the Court holds that it would deny the pending motions for leave to amend as to the Estate Plaintiff as well.

Plaintiffs may file a Fourth Amended Complaint by November 27, 2023, consistent with this ruling.

**SO ORDERED** at Hartford, Connecticut, this 27th day of October, 2023.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE